UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE

UPSTAR NUTRITION, INC.,
an Oregon Corporation,

    Plaintiff,                      CASE NO.

v.

SKY TEAM, LLC,
a Wyoming Limited Liability
Company,

    Defendant.

_____/

## COMPLAINT

    Plaintiff, UpStar Nutrition, Inc., by its undersigned counsel, sues Defendant Sky Team, LLC and states:

### Nature of the Action

1. By this action, Plaintiff seeks a declaratory judgment pursuant 28 U.S.C. § 2201 declaring that an Exclusive Distributor Agreement has expired by its terms and has not been extended by "Law 75" of the Commonwealth of Puerto Rico, and an award of monetary damages for tortious interference with contractual relations.

### The Parties, Jurisdiction and Venue

2. Plaintiff UpStar Nutrition, Inc. ("UpStar") is an Oregon corporation with its principal place of business in Scottsdale, Arizona. For purposes of diversity jurisdiction, UpStar is a citizen Oregon and Arizona.

3. Defendant Sky Team, LLC ("Sky Team") is a Wyoming Limited Liability Company.

53945686;1

4. According to its filings with Wyoming Secretary of State, Sky Team's principal address was 8130 NW 66th Street, Miami, Florida 33166 in 2016; 6001 Argyle Blvd, Suite 21-324, Jacksonville, Florida in 2017, 2018 and 2019, and then changed to Sheridan Wyoming in December 2019.

5. Sky Team has been registered to do business in Florida since January 2016 as "Sky Team Plus, LLC" (because the name Sky Team, LLC was already taken in Florida) and at all times material hereto lists its principal place of business as 6001 Argyle Blvd, Suite 21-324, Jacksonville, Florida.  It's most recent filing identifying its principal place of business as Jacksonville, Florida is dated June 22, 2020 and it's Manager as Vivamax, LLLP in Jacksonville.  To the best of Plaintiff's knowledge, Sky Team does not have any members in Wyoming or Arizona.

6. To the best of Plaintiff's knowledge, Sky Team is a citizen of Wyoming and Florida for diversity of jurisdiction purposes.

7. The matter in controversy exceeds $75,000, exclusive of interest and costs.

8. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

9. Defendant Sky Team is subject to personal jurisdiction in Florida because it is registered to do business in Florida, identifies its principal place of business as Florida on all filings with Florida Secretary of State, actually does business in Florida, and the contract that is the subject of this dispute was entered into in Florida and requires that any disputes arising under the agreement be resolved in Florida.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Sky Team resides in this district as defined by 28 U.S.C. § 1391 (c)(2).

**General Allegations**

11. UpStar Nutrition is the manufacturer of Keto Pint Ice Cream.

12. UpStar entered into an Exclusive Distributor Agreement with Sky Team dated as of March 18, 2019, a true copy of which is attached hereto as **Exhibit A** (the "Agreement"). On July 1, 2019, the Parties executed a "1st Extension of Agreement", a true copy of which is attached hereto as **Exhibit B.**

13. Pursuant to the Agreement, UpStar granted Sky Team "the exclusive right . . . to purchase, inventory, promote and resell" Keto Pint Ice Cream in "Panama, Central America (Costa Rica, Guatemala, Salvador), Mexico, Puerto Rico & Dominican Republic (the "Territory")." Agreement, ¶ 1.

14. Pursuant to the Agreement, Distributor was to "vigorously and effectively pursue the sale of the Manufacturer's Products through all channels of distribution prevailing in the Territory" and to "use its best efforts to sell Manufacturer's Products to aggressive, reputable and financially responsible dealers providing satisfactory consumer service throughout Distributor's primary marketing area." Agreement, ¶5.

15. The term of the Agreement, as extended by the 1st Extension of Agreement, expired on July 1, 2020.

16. Upon information and belief, despite having the exclusive distributorship for 18 months, Sky Team has not sold any of the Manufacturer's Products in Panama, Costa Rica, Guatemala, Salvador, Mexico, or the Dominican Republic.

17. Upon information and belief, Sky Team, without the knowledge or consent of UpStar, signed an *exclusive* agreement with one vendor in Puerto Rico, Supermercados Econo, prohibiting

Sky Team from marketing Keto Pint Ice Cream through any other distribution channels in Puerto Rico.

18. UpStar notified Sky Team that the Agreement has expired by its terms and will not be renewed.

19. On or about September 23, 2019, UpStar signed a Wholesale Basic Supplier Agreement with Costco Wholesale Corporation ("Costco") by which Costco, in or around January 2020, began to carry Keto Pint Ice Cream in some of its stores in the Southeastern United States (the "Costco Contract").

20. Unbeknownst to UpStar, Costco diverted some of its allotment of Keto Pint Ice Cream to its six stores located in Puerto Rico.

21. On June 5, 2020, Sky Team sent Costco a letter demanding that it cease and desist diverting product to its stores located in Puerto Rico, accusing it of tortious interference with the Agreement, and threatening it with "all economic damages Sky Team has and will suffer due to the tortious interference."  A copy of the "Costco Cease and Desist Letter" is attached hereto as **Exhibit C.**

22. Notwithstanding the fact that Agreement has expired by its terms, Sky Team alleges that it still has exclusive distribution rights for Puerto Rico – in perpetuity – due to a local law in Puerto Rico, referred to as "Law 75 of the Commonwealth of Puerto Rico."

23. Attached hereto as Exhibit D is a letter dated May 14, 2020 from Sky Team counsel's setting forth its position with respect to Law 75 (the "Demand Letter").

24. UpStar has offered to compensate Sky Team for any product sold by Costco in Puerto Rico prior to July 1, 2020, the expiration date of the Agreement, but Sky Team has rejected the offer.

## Puerto Rico Law 75

25. "Law 75 was enacted to prevent suppliers from terminating without just cause distributorship agreements with dealers in Puerto Rico once these dealers had developed a profitable market for the supplier's products." *Picker International v. Kodak Caribbean, Ltd.*, 826 F.Supp. 610 (D.P.R. 1993).

26. 10 L.P.R.A. § 278a, entitled "Termination of Relationship" provides:

> Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

27. "Dealer's Contract" is defined in 10 L.P.R.A. § 278(b):

> Dealer's contract. Relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

28. "Dealer" is defined in 10 L.P.R.A. § 278(a):

> Dealer. Person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service.

29. "Just Cause" is defined in 10 L.P.R.A. § 278(d):

> Just cause. Nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service.

## Law 75 Does Not Apply Because the Agreement Requires the Application of Florida Law and Contains a Mandatory Forum Selection Clause in Favor of Florida

30. The Agreement, which is between Upstar, an Oregon Corporation with its principal place of business in Arizona, and Defendant Sky Team, a Wyoming limited liability company with its principal of business in Jacksonville, Florida contains the following choice of law and venue selection clause:

> This Agreement shall be construed and enforced according to the laws of the State of Florida and any dispute under this Agreement must be brought in this venue and no other.

Agreement, ¶ 21.

31. Sky Team, even though it is a Wyoming entity with its principal place of business in Jacksonville, Florida, claims in its Demand Letter that the mandatory Florida choice of law and venue selection clauses are unenforceable as against the public policy of the Commonwealth of Puerto Rico.

32. Presumably, Sky Team is referring to 10 L.P.R.A § 278b-2 which provides:

> The dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void.
>
> Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

33. Federal Courts have routinely enforced mandatory choice of law and venue selection clauses contained in distribution contracts notwithstanding Law 75's statement of public policy because "[t]he public policy of the Commonwealth of Puerto Rico, however, is not dispositive." *Vitalife, Inc. v. Omniguide, Inc.,* 353 F.Supp. 3d 150, 157 (D.P.R. 2018) (enforcing forum selection and choice of law clauses to claims arising under Law 75), *citing, Royal Bed & Spring Co. v.*

*Famossul Industria e Comercio de Ltda,* 906 F.2d 45, 49 (1st Cir. 1990); *Antilles Cement Corp. v. Aalborg Portland A/S,* 526 F.Supp.2d 205, 210 (D.P.R. 2007); and *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F.Supp. 271, 273 (D.P.R. 1996).

34. Court's enforcing a forum selection clause recognize that "the [U.S.] Supreme Court held that enforcement of such clauses is consistent 'with ancient concepts of freedom of contract,' and that 'refusal to do so would be a 'heavy hand indeed on the future development of international commercial dealings by Americans." *D.I.P.R. Mfg. Inc. v. Perry Ellis Int'l, Inc.,* 472 F.Supp.2d 151, 153 (D.P.R. 2007) *citing, M/S Bremen v. Zapata Off-Shore Co,,* 407 U.S. 1, 11-12 (1972). *See also, Diaz-Rosado v. Auto Wax Co.*, 2005 WL 2138794 (D.P.R*.); Outek Caribbean Dist. Inc. v. Echo, Inc.*, 206 F.Supp.2d 263 (D.P.R. 2002.).

35. Accordingly, Florida law controls the enforceability of the Agreement, and Law 75 is irrelevant to the instant dispute.

## **Law 75 Does Not Apply Because Sky Team Is Not a Puerto Rican Dealer**

36. "[C]ourts that have interpreted the statute and its legislative history uniformly conclude that the statute was enacted to prevent 'economic exploitation of local dealers.'" *A.M. Capen's Co., Inc. v. American Trading and Production Corp*., 202 F.3d 469, 474 (1st Cir. 2000) (Law 75 did not apply to New Jersey corporation with exclusive distribution rights in Puerto Rico where distributor was not authorized to do business in Puerto Rico and did not maintain a warehouse, showroom, inventory, employees, office or telephone number in Puerto Rico). See, also, *Nor-Dec, Inc. v. Viracon, Inc.,* 781 F.Supp.2d 38 (D.P.R. 2010) (Law 21 – counterpart to Law 75 applicable to exclusive sales representatives – did not apply to Florida corporation with principal place of business in Florida where company was not registered to do business in Puerto Rico, never filed tax returns in Puerto Rico and did not maintain an office or warehouse in Puerto Rico).

37. Law 75 does not apply to a "company with a contractual right to distribute in Puerto Rico, regardless of the locale of the bulk of its business." *A.M. Capen's Co., Inc.* at 473.

38. Upon information and belief, Sky Team: (i) is not registered to do business in Puerto Rico; (ii) does not file tax returns in Puerto Rico; (iii) does not maintain an office or warehouse in Puerto Rico; (iv) does not have a telephone number in Puerto Rico; (v) does not own property in Puerto Rico; (vi) does not have a bank account in Puerto Rico; and (vii) does not have employees in Puerto Rico.

39. Accordingly, Sky Team is not a "Dealer" within the meaning of Law 75, and the law does not apply to the Agreement between UpStar and Sky Team.

**Even if Law 75 Applies; Just Cause Exists for the Termination of the Agreement**

40. 10 L.P.R.A § 278(a), upon which Sky Team relies, provides that a principal may not refuse to renew a distributor agreement upon its normal expiration "except for just cause."

41. "Just cause" is defined in 10 L.P.R.A. § 278(d) as "[n]onperformance of any of the essential obligations of the dealer's contract . . . or any action or omission . . . that adversely and substantially affects to the interest of the principal . . . in promoting the marketing or distribution of the merchandise."

42. Even if Law 75 applies to the Agreement, "just cause" exists for UpStar's decision not to renew the Agreement upon its expiration.

43. The Agreement provided Sky Team with the exclusive distribution rights for "Panama, Central America (Costa Rica, Guatemala, Salvador), Mexico, Puerto Rico & Dominican Republic."

44. As noted above, despite having sixteen months to develop these markets, upon information and belief, Sky Team did not sell any Keto Pint Ice Cream in Panama, Central America (Costa Rica, Guatemala, Salvador), Mexico, or the Dominican Republic.

45. In each jurisdiction within its Territory, Sky Team was obligated "vigorously and effectively pursue the sale of the Manufacturer's Products through all channels of distribution prevailing in the Territory" and to "use its best efforts to sell Manufacturer's Products to aggressive, reputable and financially responsible dealers providing satisfactory consumer service throughout Distributor's primary marketing area."

46. Sky Team completely failed to meet these obligations in Panama, Central America (Costa Rica, Guatemala, Salvador), Mexico, and the Dominican Republic.

47. Similarly, Sky Team failed to meet these obligations in Puerto Rico.

48. Upon information and belief, Sky Team signed an exclusive distribution agreement with one vendor, Supermercados Econo.

49. Such an agreement expressly prohibited Sky Team from marketing and utilizing to the remaining available distribution channels in Puerto Rico as required by the Agreement.

50. Further, Sky Team has been late on payment for product, ignored correspondence demanding payment for product, refused to provide financial information necessary for UpStar to obtain credit for sales to Sky Team, refused to provide forecasts necessary for UpStar to effectively manage its production and inventory, failed to respond to inquiries from actual and potential purchasers, failed to fulfill purchase orders issued from clients, and refused to advise UpStar information about its sales including the ultimate purchaser or the sales price.

51. Additionally, Sky Team falsely represented the nature of its business and capabilities in order to induce UpStar to execute the Agreement.  Sky Team both verbally and in writing falsely

represented that it is a direct distributor into 11 countries utilizing its own logistics and will distribute the product into major retailers such as Riba Smith, Walmart, Sam's Club and others.

52. Finally, the Agreement obligated Sky Team to sell a minimum of 180 cases per flavor per month.  Sky Team failed to meet this sales quota.

53. Accordingly, just cause existed for the non-renewal of the Agreement.

54. All conditions precedent to the institution of this action have occurred, been performed or excused.

## COUNT I
## DECLARATORY JUDGMENT

55. Plaintiff incorporates and realleges paragraphs 1 through 54 above as if fully set forth herein.

56. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

57. A substantial controversy exists between the Parties.

58. Sky Team claims that despite the expiration of the Agreement by its terms, (i) the Agreement has been extended indefinitely pursuant to 10 L.P.R.A. 278, *et. seq.*; (ii) UpStar is violating the Agreement by selling product to Costco, knowing that Costco is selling in Puerto Rico; and (iii) Costco is tortiously interfering with the Sky Team – UpStar Agreement.

59. Plaintiff has, and continues to suffer, injury.  As a result of Sky Team's demand, Costco has ceased selling Keto Pint Ice Cream in its stores in Puerto Rico, resulting in damages to Plaintiff from lost sales and lost development in the relevant market.

60. The injury being suffered by Plaintiff will be redressed by a favorable ruling.

61. Accordingly, Plaintiff requests that this Court accept jurisdiction over the controversy and declare that: (i) the Agreement expired by its terms on July 1, 2020 and neither party has any rights

or obligations thereunder; (ii) the forum selection and choice of law provisions are fully enforceable; and (iii) Law 75 does not apply to the Agreement because (a) the Parties expressly choose to apply Florida law to the Agreement and any disputes thereunder, (b) Sky Team is not a "dealer" in Puerto Rico; and (c) even if Law 75 does apply, just cause existed for Sky Team not to renew the Agreement upon the expiration thereof on July 1, 2020.

WHEREFORE, Plaintiff UpStar Nutrition, Inc. requests that this Court take jurisdiction over the Parties and declare the rights and obligations of the Parties pursuant to the Exclusive Distributor Agreement, and grant such other relief that the Court deems just and proper.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT and ADVANTAGEOUS BUSINESS RELATIONSHIP

62. Plaintiff incorporates and realleges paragraphs 1 through 54 above as if fully set forth herein.

63. Plaintiff is a party to the Costco Contract, under which it has legal rights.

64. Plaintiff's relationship with Costco constitutes an advantageous business relationship.

65. Sky Team was aware of the Costco Contract and the advantageous business relationship enjoyed by Plaintiff with Costco.

66. Sky Team intentionally and unjustifiably interfered with that relationship by wrongfully claiming that it has an exclusive distribution agreement with UpStar beyond July 1, 2020, sending the Cease and Desist Letter to Costco, demanding that Costco stop selling Keto Pint Ice Cream in its stores in Puerto Rico, and threatening Costco with money damages if it failed to accede to Sky Team's demands.

67. Plaintiff has been damaged as a direct and proximate result of Sky Teams tortious interference.

WHEREFORE, Plaintiff UpStar Nutrition Inc. demands judgment against Sky Team, LLC for compensatory damages, interest and costs, together with such other relief as the Court deems just and proper.

Dated:  July 27, 2020                     Respectfully Submitted:

AKERMAN LLP
350 E. Las Olas Boulevard, 16th Floor
Ft. Lauderdale, Florida 33301
(954) 463-2700


By: /s/ Andrew P. Gold
       Andrew P. Gold (FBN 612367)
andrew.gold@akerman.com
jill.parnes@akerman.com

*Attorneys for Plaintiff, UpStar Nutrition, Inc.*